UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

**THE ESTATE OF LINDSEY DRAKE,** by and through its Personal Representative John Swartz;

**Case No.:**

Plaintiff,

**Hon.**

v.

**Complaint and Jury Demand**

**THE CITY OF SAGINAW; THE CITY OF SAGINAW POLICE DEPARTMENT; OFFICERS MATT CARPUS, JULIAN GUEVARA, TYLER WILLIAMSON DESHAWN HARRIS, AND ISSAC BABINSKI (in their personal and official capacities);**

Defendants.

---

**THE NICHOLS LAW FIRM, PLLC**
By: Michael J. Nichols (P59391)
3452 E. Lake Lansing Rd.
East Lansing, MI 48823
(517) 432 9000
mnichols@nicholslaw.net

---

**COMPLAINT AND JURY DEMAND**

## CONTENTS

PARTIES, JURISDICTION, AND VENUE ...................................................................................3

GENERAL ALLEGATIONS ........................................................................................................5

COUNT I: VIOLATION OF CIVIL RIGHTS, 42 USC § 1983, DUE PROCESS AGAINST DEFENDANT OFFICERS ............................................................................................................11

COUNT II: VIOLATION OF CIVIL RIGHTS, 42 USC § 1983, AGAINST DEFENDANT CITY AND DEFENDANT DEPARTMENT ...............................................................................................12

**NOW COMES** Plaintiff, The Estate of Lindsey Drake, by John Swartz in his capacity as personal representative for Plaintiff, by and through its attorneys, The Nichols Law Firm, PLLC, and for Plaintiff's Complaint alleges and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiff as a result of the acts, conduct, and omissions of the City of Saginaw ("Defendant City"), the City of Saginaw Police Department ("Defendant Department"), and their respective employees, representatives, and agents, as named above, relating to the violation of Plaintiff's constitutional rights.

2. This action arises under 42 U.S.C. 1983. Jurisdiction is conferred by 28 U.S.C. 1331, 1343(a)(3), (4)

3. Lindsey Drake ("Plaintiff Decedent"), resided in Michigan for the entirety of her life and was a citizen of that state upon her death. Her estate, the Plaintiff, was incorporated in Saginaw County, Michigan under the laws of the state of Michigan.

4. The events giving rise to this complaint occurred in the City of Saginaw, Saginaw County, Michigan, within the jurisdiction of the Defendant City and Defendant Department.

5. Defendant Matt Carpus, at all relevant times stated herein, was a citizen of the State of Michigan, and was employed by and acting on behalf of the Defendant City and Defendant Department as a police officer.

6. Defendant Julian Guevara, at all relevant times stated herein, was a citizen of the State of Michigan, and was employed by and acting on behalf of the Defendant City and Defendant Department as a police officer.

7. Defendant Tyler Williamson, at all relevant times stated herein, was a citizen of the State of Michigan, and was employed by and acting on behalf of the Defendant City and Defendant Department as a police officer.

8. Defendant Deshawn Harris, at all relevant times stated herein, was a citizen of the State of Michigan, and was employed by and acting on behalf of the Defendant City and Defendant Department as a police officer.

9. Defendant and Issac Babinski, at all relevant times stated herein, was a citizen of the State of Michigan, and was employed by and acting on behalf of the Defendant City and Defendant Department as a police officer.[1]

10. Defendant Officers are being sued in both their official and personal capacities.

11. The Probate Court of Saginaw County appointed John Swartz as Personal Representative for the Estate of Lindsey Drake, File No. 19-139289-DE.

12. This Complaint is brought pursuant to 42 U.S.C. § 1983 and the common law.

13. Federal jurisdiction is conferred by 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343 (Civil Rights).

14. The amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the wrongful actions alleged herein occurred in Saginaw County, Michigan and Defendant City and Defendant Department are public entities located and exercising their authority in Saginaw County, Michigan, which is within the Eastern District of Michigan, Northern Division.

---

[1] Defendants Matt Carpus, Julian Guevara, Tyler Williamson, Deshawn Harris, and Issac Babinski (collectively, "Defendant Officers")

16. The acts complained of herein have caused Plaintiff actual damages including, without limitation, death, pain and suffering, mental anguish, and emotional distress.

17. The acts complained of herein constitute a deprivation of Plaintiff Decedent's rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution, and Article 1, § 17 of the Michigan Constitution.

## GENERAL ALLEGATIONS

18. Plaintiff incorporates the preceding paragraphs as though fully stated herein.

19. On June 24, 2016, Plaintiff Decedent, her significant other, Rodolfo Sanchez ("Sanchez"), their daughter, Amiliana Sanchez ("Amiliana"), and Rodolfo's sister, Nikki Cortez ("Nikki"), were all present at a party held in the vicinity of Throop Street in the City of Saginaw.

20. At the time, Amiliana was four months old.

21. During that party, Sanchez consumed alcoholic beverages and illegal drugs, including without limitation, crack cocaine.

22. After consuming said alcohol and cocaine, Sanchez got into an argument with Plaintiff Decedent, Nikki, or both.

23. Melissa Dockham, another partygoer, later stated that Sanchez had struck her because she was arguing with Nikki.

24. Sanchez, after learning that the police had been called, then left the party with Plaintiff Decedent, Amiliana, Nikki, and Kaleb Hunt (who had also been attending) in Plaintiff Decedent vehicle.

25. Sanchez was the driver of said vehicle, despite having consumed both alcohol and crack cocaine.

26. Cynthia Arnold, a partygoer who called 911 due to the aforementioned fight, later described him as having drank "a lot of alcohol," growing angrier as he did so.

27. Cynthia had observed Sanchez drinking vodka, tequila, and Remy Martin. She stated that Sanchez was "high and intoxicated just prior to leaving" and that he was having "a hard time walking and was staggering around." She also informed police that "he smelled of intoxicants and had very thick slurred speech."

28. Another witness, Kaleb Hunt, would later tell police that, while he was in the car with Sanchez, he observed him drinking peppermint schnapps from a bottle in the car.

29. On our about 3:44:00 AM, Defendant Department received a call "for a fight in a yard."

30. Upon information and belief, this call for service was for the fight described above.

31. After leaving the party, Sanchez drove recklessly, at speeds in excess of 95 miles per hour, through yield and stop signs, eventually pulling the car over after it began to smoke following an impact with a curb.

32. On or about 04:07:37AM on June 24, 2016, Defendant Officers made contact with Sanchez. Sanchez was found to be near a Marathon gas station nearby, in Plaintiff Decedent's vehicle and the vehicle was stopped, likely because of the prior impact with the curb.

33. Defendant Officers engaged in an investigation with Rodolfo and briefly detained him.

34. Upon information and belief, Defendant Officers asked Sanchez to exit the vehicle. Sanchez did so.

35. Sanchez had also been arrested for operating a vehicle while intoxicated on May 29, 2016, approximately one month prior to the current incident.

36. Defendant Officers proceeded to question and/or interview Sanchez, who was shirtless at the time.

37. Defendant Officers also spoke with Plaintiff Decedent and Nikki Cortez.

38. After speaking with Sanchez, Plaintiff Decedent, and Nikki, Defendant Officers had them return to Plaintiff Decedent's vehicle to continue to their destination at approximately 04:15:51 AM.

39. The officers permitted them to return to Plaintiff Decedent's vehicle with Sanchez behind the wheel, even though Sanchez displayed obvious signs of intoxication including the odor of alcohol emitting from his person.

40. Upon information and belief, Sanchez was not in possession of a valid driver's license at the time of the traffic stop.

41. Driving without a valid driver license is a misdemeanor for which an officer may make an arrest without a warrant.

42. Upon information and belief, the registration for this vehicle was expired at the time of the traffic stop.

43. Despite Sanchez not being in possession of a valid driver's license, and despite the fact that Plaintiff Decedent's vehicle was not properly registered under Michigan law, Defendant Officers permitted Sanchez, Plaintiff Decedent, Amiliana, and Nikki to not only leave the scene, but also permitted Sanchez to drive the vehicle away.

44. At approximately 04:22:00 AM, a mere seven minutes after the traffic stop, Defendant Sanchez intentionally and/or recklessly accelerated to a speed of approximately 52-59 miles per hour in a limited access speed zone and crashed the vehicle into a large tree at approximately 34-44 miles per hour at the time of impact.

45. The crash resulted in the death of Amiliana Sanchez and Lindsey Drake, both of whom died at the scene. Nikki Cortez was seriously injured due to the crash but survived.

46. Sanchez was later apprehended by the Michigan State Police, despite having fled the scene of the accident with the injuries that he sustained.

47. Nearby officers from multiple jurisdictions, including Saginaw Township, Carrollton Township, the Saginaw County Sheriff's Department, and the Michigan State Police, responded to the scene of the crash.

48. On scene, Deputy Charles Gibson of the Saginaw County Sheriff's Office noted that he "could clearly detect the strong odor of intoxication" upon opening the door of the vehicle, and later, upon contact with Sanchez that he "could clearly detect the odor of alcohol from [upon information and belief, Sanchez] coming from [Sanchez] as he spoke."

49. Sanchez was transported to St. Mary's Hospital, where he received treatment for injuries sustained in the crash. While he was being treated, the Saginaw County Sheriff's Office interviewed Sanchez.

50. During that interview, Sanchez indicated he had an encounter with Defendant Officers and "was just pulled over before he hit the tree." He further stated, "I told [Defendant Officers] that I was drunk" and to "take [me] to jail." He further stated that Defendant Officers had instructed him to "Get the fuck out of the City," at that scene.

51. Sanchez also indicated that he had an open fifth of liquor in his vehicle at the time of his encounter with Defendant Officers.

52. Sanchez later alleged that he told officers that he was refusing to drive Lindsey's vehicle, at which point he was instructed to either drive away or be arrested.

53. On or about July 11, 2016, Sanchez's blood was analyzed by the Michigan State Police Forensic Science Division. (Laboratory Number TX16-8322). This test revealed a blood alcohol level of 0.20 grams of etoh/100 milliliters of blood.

54. Even though individuals handle alcohol differently on any given day, the statements by Sanchez during his brief detention, the close proximity of the officers to him, and the fact that he just struck something while driving, is obvious evidence to conclude that Defendant Officers had suspicion that this man was too drunk to drive, yet literally ordered him to drive anyway.

55. Additional testing further revealed the presence of lorazepam, THC, N-desmethyldiazepam, cocaine, benzoylecgonine, and hydrocodone in Sanchez's blood. Testing of a cola can that Sanchez had used to smoke crack cocaine also revealed traces of crack cocaine.

56. Sanchez has since plead no contest to one count of OWI Causing Death, contrary to MCL 257.6254, and one count of OWI Causing Serious Injury contrary to MCL 257.6255-A in *People v Rodolfo Sanchez*, Saginaw County Circuit Court Case No. 16-042629-FH. Sanchez is serving a 207 to 420-month sentence for those crimes.

57. Upon information and belief, at all relevant times, Defendant Department and Defendant City maintained a policy prohibiting officers from releasing an individual known to be intoxicated onto the public roadway.

58. Upon information and belief, allowing an intoxicated individual to drive on the public roadway is contrary to the custom, practice, and policies of Defendant City and Defendant Department, as well as contrary to currently accepted law enforcement standards.

59. Upon information and belief, Defendant Officers are not vested with the discretion to permit a clearly intoxicated individual to operate a motor vehicle on the public roadway.

60. Upon information and belief, it is contrary to law and policy for police to release a person from their custody and control who is sufficiently intoxicated to serve as a danger to himself or others.

61. Upon information and belief, at all relevant times, Defendant Department and Defendant City maintained a Policy prohibiting officers from permitting an individual without a valid driver's license from operating a motor vehicle on the public roadway.

62. Upon information and belief, allowing an individual without a valid driver's license to drive on the public roadway is contrary to the custom, practice, and policies of Defendant Department and Defendant City, as well as current law enforcement standards.

63. Upon information and belief, Defendant City and Defendant Department maintain policies requiring law enforcement officers to either conduct standard field sobriety testing ("SFST") on individuals under suspicion of operating a motor vehicle while intoxicated, or to request that such testing be conducted.

64. At all relevant times, Defendants Babinski, Carpus, Guevara, and Harris were not trained on SFSTs by the Michigan Commission on Law Enforcement Standards ("MCOLES"). It is unknown whether Defendant Williamson was certified in SFSTs by MCOLES.

65. Defendant Officers created a danger by releasing an intoxicated, unlicensed driver to operate a motor vehicle on the public roadway.

66. By permitting Lindsey, Amiliana, and Nikki to be passengers in the vehicle that Sanchez was driving, Defendant Officers created a danger that had been abated by their initial investigatory detention when the car was stopped near the gas station.

67. Defendant Officers' decision to either force or permit Sanchez to drive and the subsequent decision to permit passengers to enter the vehicle that Sanchez was driving was the proximate and legal cause of Plaintiff Decedent's death.

**COUNT I: VIOLATION OF CIVIL RIGHTS, 42 USC § 1983, DUE PROCESS AGAINST DEFENDANT OFFICERS**

68. Plaintiff incorporates the preceding paragraphs as though fully stated herein.

69. At all relevant times, Defendants were operating under the color of law, being the authority vested in them by the State of Michigan and Defendant City and Department to act as police officers.

70. The actions of Defendant Officers collectively, and each of them individually, created a danger that had been previously abated, thereby depriving Plaintiff Decedent of her due process rights to life and liberty under the Fifth and Fourteenth Amendments of the United States Constitution, as well as Article 1, §17 of the Michigan Constitution.

71. By conducting a traffic stop and subsequent interview with Sanchez, Lindsey, Amiliana, and Nikki, Defendant Officers briefly detained and prohibited the movements of everyone in the vehicle, the aforementioned individuals' personal liberty, thereby creating a relationship where Defendant Officers owed the aforementioned a duty to not subject them to danger.

72. Defendant Officers knew, or reasonably should have known, that Sanchez was under the influence of drugs and alcohol.

73. Defendant Officers knew, or reasonably should have known, that permitting Sanchez to drive the vehicle away posed a clear, present, and immediate danger to himself and the occupants of his vehicle, including Plaintiff Decedent.

74. By permitting and/or ordering Sanchez to drive away from the scene while under the influence of alcohol and illegal drugs, Defendant Officers placed Plaintiff Decedent in a position where she was more vulnerable to danger than she had been when the vehicle was pulled over.

75. Plaintiff Decedent, could not refuse to enter the vehicle, having been ordered to get out of the city by the Defendants and to get in the car by Sanchez.

76. Defendant Officers owed Plaintiff Decedent a duty to not permit Sanchez to drive when they knew or reasonably should have known that he was intoxicated, and a further duty to not allow Plaintiff Decedent to enter a vehicle with a driver who was obviously intoxicated.

77. Defendant Officers' deliberate indifference to Plaintiff Decedent's safety is sufficient to render them liable for a violation of Plaintiff Decedent's substantive due process rights.

78. Defendant Officers' failure to prevent Sanchez from driving was a constitutionally arbitrary act that rises to the level of shocking the conscience.

79. Alternatively, Defendant Officers' demand that Sanchez either drive, or face arrest, makes them the direct and proximate cause of Plaintiff Decedent's death. By issuing this instruction, Defendant Officers created the danger that killed Plaintiff Decedent.

### COUNT II: VIOLATION OF CIVIL RIGHTS, 42 USC § 1983, AGAINST DEFENDANT CITY AND DEFENDANT DEPARTMENT

80. Plaintiff incorporates the preceding paragraphs as though fully stated herein.

81. Defendant City and Defendant Department are responsible for the training of their police officers, including Defendant Officers.

82. Upon information and belief, Defendant City and/or Defendant Department maintain a policy, practice, or custom of requiring officers to investigate, upon suspicion that a driver is intoxicated, whether the driver is, in fact, intoxicated and remove him from the road.

83. Upon information and belief, Defendant City and/or Defendant Department maintain a policy, practice, or custom of requiring intoxicated drivers to be arrested upon confirmation of their intoxicated status.

84. Defendant City and Defendant Department failed to adequately train Defendant Officers on appropriate procedures for identifying and properly managing intoxicated drivers.

85. Defendant Department's records reveal that Defendants Babinski, Carpus, Guevara, and Harris are not certified in SFSTs.

86. Alternatively, Defendant City and/or Defendant Department's failure to maintain a policy addressing the procedures for identifying and properly managing intoxicated drivers represents a failure to adequately train Defendant Officers to appropriately respond to intoxicated drivers.

87. Defendant City's and Defendant Department's failure to adequately train Defendant Officers represents deliberate indifference to the known and obvious consequences of allowing an intoxicated driver to operate a motor vehicle.

88. The risk of constitutional violations arising from this failure to train is plainly obvious, given the extreme risk that intoxicated drivers pose to their passengers, other drivers, pedestrians, and themselves.

**PRAYER FOR RELIEF**

Plaintiff, based on the wrongful acts and counts set forth above, requests this Court and the finder of fact to enter a judgment in Plaintiff's favor against all named Defendants on all counts

and claims as indicated above in an amount consistent with the proofs at trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact award Plaintiff all applicable damages, including without limitation:

1. Compensatory damages in an amount to be determined as fair and just under the circumstances by the trier of fact, including without limitation damages for loss of life, damages for loss of liberty, pain and suffering, and attorney fees, interest, and costs pursuant to 42 U.S.C. § 1983 as to Plaintiff's federal civil rights and constitutional violations;

2. Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

3. Reasonable attorney fees, interest, and costs; and

4. Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability.

5. Such other relief as the Court deems just, equitable, and proper.

        Respectfully Submitted,

        **THE NICHOLS LAW FIRM, PLLC**

Dated: June 24, 2020         /s/ Michael J. Nichols
        **Michael J. Nichols (P59391)**
        **Attorney for Plaintiff**
        3452 East Lake Lansing Road
        East Lansing, Michigan 48823
        Phone: (517) 432-9000
        mnichols@nicholslaw.net

## **JURY DEMAND**

Plaintiff, by and through its attorneys, **THE NICHOLS LAW FIRM, PLLC**, hereby demands a trial by jury on all claims set forth above.

                                                Respectfully Submitted,

                                                **THE NICHOLS LAW FIRM, PLLC**

Dated: June 24, 2020                              /s/ Michael J. Nichols
                                                **Michael J. Nichols (P59391)**
                                                **Attorney for Plaintiff**

**THE ESTATE OF LINDSEY DRAKE,** by and through its **Personal Representative John Swartz;**

           **Plaintiff,**

v.

**THE CITY OF SAGINAW; THE CITY OF SAGINAW POLICE DEPARTMENT; OFFICERS MATT CARPUS, JULIAN GUEVARA, TYLER WILLIAMSON DESHAWN HARRIS, AND ISSAC BABINSKI (in their personal and official capacities);**

           **Defendants.**

Case No.:

Hon.

**Complaint and Jury Demand**

---

**THE NICHOLS LAW FIRM, PLLC**
By: Michael J. Nichols (P59391)
3452 E. Lake Lansing Rd.
East Lansing, MI 48823
(517) 432 9000
mnichols@nicholslaw.net

---

## PROOF OF SERVICE

    I, **Aaron Martinez**, declare to the best of my knowledge, information, and belief, that on June 24, 2020, I served the original copy of the **Appearance of Counsel** and **Complaint and Jury Demand** upon the Clerk of the U.S. District Court for the Eastern District of Michigan via the ECF electronic filing system.

                                                                     Aaron Martinez